Filed in Providence/Bristol County Superior Court
Submitted: 5/21/2025 3:08 PM
Envelope: 5139359
Reviewer: Carol M.

Case 1:25-cv-00308-MSM-PAS    Document 1-1    Filed 06/30/25    Page 1 of 14 PageID #: 5

**STATE OF RHODE ISLAND**
**PROVIDENCE, SC**

**SUPERIOR COURT**

| | |
|---|---|
| **NEW ENGLAND PROPERTY** : | |
| **SERVICES GROUP, LLC,** : | |
| : | **C.A. No.:** |
| **Plaintiff** : | |
| : | |
| **v.** : | |
| : | **JURY TRIAL DEMANDED** |
| **CERTAINS UNDERWRITERS** : | |
| **AT LLOYD'S of LONDON,** : | |
| : | |
| **Defendant** : | |

## COMPLAINT

### PARTIES

1. The Plaintiff, New England Property Services Group, LLC, ("NEPSG") is a Massachusetts Limited Liability Company that is properly registered to do business in the State of Rhode Island.

2. The Defendant, Underwriters at Lloyd's, London ("LLOYD'S"), is a foreign corporation with its principal offices located in London, England and is properly licensed to do business in the state of Rhode Island.

### JURISDICTION AND VENUE

3. This court has jurisdiction under R.I. Gen. Laws § 8-2-13, as the claims involve equitable relief and equitable issues.

4. This Court has jurisdiction over this matter pursuant to Rhode Island General Laws § 8-2-14. The Amount in controversy is in excess of the minimum jurisdictional limits of the Court.

1

Filed in Providence/Bristol County Superior Court
Submitted: 5/21/2025 3:08 PM
Envelope: 5139359
Reviewer: Carol M.

5. Venue is proper in Providence County because the insured property is located there and the events giving rise to this action occurred in Providence County, Rhode Island.

## GENERAL ALLEGATIONS

6. LLOYD'S renewed an existing commercial policy number, referenced as policy number RS6464-01 ("Policy"), to Sarkis Yepremian and Ardemis Yepremian (the "Policyholders") who paid the premium.

7. The Policy's effective coverage dates were March 26, 2022, to March 26, 2023. See *Exhibit 1- Policy*

8. At all relevant times, the Policy insured the Policyholder's property located at 741-743-745 Reservoir Avenue, Cranston Rhode Island (the "Subject Premises")

9. At all relevant times, the Policy provided coverage for direct physical loss to the Subject Premises.

10. At all relevant times, the Policyholder complied with all duties under the Policy, including but not limited to the applicable duties after loss under the Policy.

11. At all relevant times, NEPSG complied with all duties under the Policy, including but not limited to the applicable duties after loss after loss under the Policy.

12. The Policy covers damage from storm related events, including but not limited to, damage from wind, water, falling objects, snow, and ice, as stated in the *Causes of Loss- Special Form* Section of the Policy.

13. On or about March 14, 2023, the Policyholders filed a storm damage claim with LLOYD'S, who accepted the claim and assigned it number 51A210032 (the "Claim"), with a reported loss date of March 14, 2023.

d in Providence/Bristol County Superior Court
ɔmitted: 5/21/2025 3:08 PM
velope: 5139359
viewer: Carol M.

14.    NEPSG and/or the Policyholders complied with all applicable statutes of limitation under Rhode Island law with respect to the Claim, the Policy, and this litigation.

15.    On or about May 24, 2023, the Policyholders and NEPSG executed a Home Improvement Contract which included an irrevocable assignment of insurance claim benefits and rights and a direction to pay (the "Contract").

16.    Pursuant to the Contract, the Policyholders assigned all rights and benefits related to the Claim to NEPSG in exchange for NEPSG's performance of the restoration work. See *Exhibit 2-Contract.*

17.    On or about May 24, 2023, Mr. Ceceri emailed LLOYD'S representatives Alex Hairabedian ("Mr. Hairabedian") and Evan Dillman of Johns Eastern ("Mr. Dillman"), notifying them that NEPSG was the lawful assignee of the Claim, requested all future communication be directed to NEPSG, attached the Contract, and requested a site inspection. See *Exhibit 3- NEPSG Introduction*

18.    On or about May 26, 2023, SeekNow emailed Mr. Dillman to confirm his request for a roof inspection and tarp installation. See *Exhibit 4- SeekNow Inspection Request*

19.    On or about June 1, 2023, Mr. Ceceri, Mr. Dillman, Ramon Matossegura ("Mr. Matossegura"), and an individual alleged to be 1099 Independent Contractor for SeekNow, met at the Subject Premises to investigate, inspect, and document the reported damage.

20.    Mr. Matossegura failed to perform a full inspection by not examining the entire roof, including areas where NEPSG had identified damage to asphalt shingles on the left main slope and right rear lower slope.

3

:d in Providence/Bristol County Superior Court
ɔmitted: 5/21/2025 3:08 PM
/elope: 5139359
/iewer: Carol M.

21.   Additionally, without NEPSG's knowledge or consent, Mr. Matossegura removed an asphalt shingle, causing further damage to the right main slope.

22.   Following Mr. Dillman's instructions to cover all damaged areas, Mr. Matossegura installed an undersized blue tarp with jagged edges that was improperly secured and failed to divert water effectively.

23.   Mr. Matossegura tried to conceal the damage he created with a second faulty tarp and failed to document two damaged shingles that NEPSG recorded and showed to Mr. Dillman.

24.   Mr. Dillman was present during the tarp installation and did not correct the improper placement.

25.   The SeekNow inspection was documented by NEPSG with drone footage. See *Exhibit 5- SeekNow Report*

26.   During the same inspection, Mr. Dillman conducted limited visual observations, documenting some of the single-story roof surface areas with photographs and viewing some of the vinyl siding damage through a series of photographs.

27.   The SeekNow inspection was incomplete, as Mr. Matossegura failed to inspect all roof elevations and slopes and he caused further damage through improper tarp installation.

28.   On or about June 16, 2023, Mr. Ceceri conducted a solo follow-up inspection of the Subject Premises to check the improperly installed tarp and to photograph the exterior perimeter of the Subject Premises.

29.   On or about June 19, 2023, Mr. Ceceri emailed Mr. Dillman requesting confirmation of the Claim coverage and a copy of the SeekNow report. See *Exhibit 6- Correspondence with Mr. Dillman*

d in Providence/Bristol County Superior Court
omitted: 5/21/2025 3:08 PM
velope: 5139359
viewer: Carol M.

30. On or about June 19, 2023, Mr. Dillman responded that the report was submitted to Hausch & Co. on June 13, 2023, and due to limited authority, he was awaiting further authorization and could not share the report, which he stated was Hausch & Co.'s proprietary material.

31. On or about June 21, 2023, Mr. Ceceri emailed Mr. Hairabedian requesting a Claim update, which Mr. Hairabedian replied stating that they were still awaiting the field adjuster's initial report – directly contradicting Mr. Dillman's June 19 statement. See *Exhibit 7- NEPSG Correspondence with Hausch & Co.*

32. On or about June 22, 2023, Mr. Ceceri requested the SeekNow report for the third time. See *Exhibit 7- NEPSG Correspondence with Hausch & Company*

33. On or about June 23, 2023, Mr. Hairabedian replied, stating that inspection reports were proprietary to the Underwriters, confirmed receipt of the field adjuster's report, and noted a coverage letter would be sent once a determination was made. See *Exhibit 7- NEPSG Correspondence with Hausch & Company*

34. On or about June 28, 2023, Mr. Hairabedian emailed Mr. Ceceri a denial of the Claim and attached the denial letter (the "Denial Letter"). See *Exhibit 8- Claim Denial Letter*

35. The Policy covers storm-related damage, including wind and water, and argues the denial was based on a flawed opinion mischaracterizing the cause.

36. LLOYD'S Denial Letter acknowledged roof damage at the Subject Premises and confirmed wind as the cause, stating the June 1, 2023, inspection found "wind damage and removal of shingles on the right elevation of the main roof structure."

d in Providence/Bristol County Superior Court
omitted: 5/21/2025 3:08 PM
velope: 5139359
viewer: Carol M.

37.   LLOYD'S Claimed the Policy excludes pre-existing damage and requires prompt notice, but upon review of all 82 pages, NEPSG found no mention of the terms "pre-existing" or "existing".

38.   On or about June 29, 2023, NEPSG responded to LLYOD'S Denial Letter requesting a certified copy of the Policy, confirmation of inspection areas, evidence supporting the wind damage findings, and any documentation or photos used in the denial.

39.   NEPSG's response also included NEPSG's formal Demand for Arbitration under the Policy and R.I. Gen. Laws § 10-3-1. See *Exhibit 9- Demand for Arbitration*

40.   On or about July 6, 2023, Mr. Hairabedian, via email, stated that documents and photos were proprietary to the Underwriters, confirmed the certified Policy would be provided upon receipt, and included the requested definitions. See *Exhibit 10- Mr. Hairabedian's Reply to Mr. Ceceri's Questions*

41.   In the same email, Mr. Hairabedian also confirmed that wind is a covered peril under the Policy but stated that the Claim was denied due to pre-existing damage.

42.   On or about July 6, 2023, LLOYD'S sent a letter via email rejecting NEPSG's Demand for Arbitration. See *Exhibit 11- LLOYD'S Reply to Demand Letter*

43.   On or about July 11, 2023, NEPSG replied to LLOYD'S wrongful rejection, reaffirming its Demand and providing photo evidence of the damage and a copy of the Contract. See *Exhibit 12- NEPSG's Reply to Arbitration Rejection*

44.   On or about August 2, 2023, LLOYD'S sent NEPSG a reservation of rights letter, confirming receipt of NEPSG's July 11 letter and stating it had retained HAAG Global ("HAAG") for further inspection. See *Exhibit 13 – LLOYD'S Reservation of Rights Letter*

6

d in Providence/Bristol County Superior Court
omitted: 5/21/2025 3:08 PM
velope: 5139359
viewer: Carol M.

45. LLOYD'S responded twenty-two (22) days late to the July 11 letter, violating Rhode Island DBR Regulation 230-RICR-20-40-2.6, which requires a response within 15 days. See *Exhibit 14 – R.I. Title 230-RICR20-40-2.6*

46. On or about August 10, 2023, NEPSG submitted a notarized Proof of Loss ("POL") with a detailed Scope of Work. See *Exhibit 15- Scope of Work and POL*

47. That same day, Mr. Hairabedian confirmed receipt of the POL and Scope of Work and stated the HAAG inspection was scheduled for August 22, 2023. See *Exhibit 16- Confirmation of POL and Inspection*

48. On or about September 29, 2023, HAAG engineer coordinator Wendy Van Norden emailed NEPSG to schedule an inspection and requested the removal of the roof tarp. See *Exhibit 17- Correspondence Regarding Tarp Removal for Inspection*

49. On or about that same day, Mr. Ceceri agreed to the inspection but declined to remove the tarp, explaining it was installed by a SeekNow technician hired by LLOYDS's representative Hausch & Co., making LLOYD's responsible for its removal.

50. On or about October 4, 2023, Mr. Hairabedian denied responsibility for the tarp, stating he only authorized SeekNow for a ladder assist and not tarp installation due to coverage concerns. See *Exhibit 18- Mr. Hairabedian Email Response to Tarp Removal*

51. Page 19 of the SeekNow Report contradicts this, noting, "Tarp approved by adjuster to cover all of the damaged area to prevent future damage".

52. On or about October 19, 2023, HAAG employee Brian Olivieri, HANCOCK inspector Philip Miles, and Mr. Dillman conducted an inspection of the Subject Premises.

53. During the inspection, Mr. Miles improperly reinstalled the tarp, using new fasteners that created additional holes in the roof.

ed in Providence R.I.
omitted: 5/21/2025 3:08 PM
elope: 5139359
iewer: Carol M.

54. As with the initial tarp installation, the tarp failed to properly cover the damaged areas.

55. Upon information and belief, neither Mr. Olivieri nor Mr. Miles held valid HAAG certifications at the time of the inspection or thereafter, according to HAAG's certified inspector search tool. See *Exhibit 19- HAAG Certification Search*

56. Mr. Olivieri's inspection was inadequate and failed to meet HAAG standards.

57. Mr. Olivieri did not inspect all roof elevations, which resulted in missed damage, including a visibly torn shingle on the left slope near the gutter edge and a creased shingle on the lower rear right elevation.

58. Upon information and belief, Mr. Olivieri is no longer employed by HAAG. See *Exhibit 20- Mr. Olivieri's Credentials*

59. On or about November 1, 2023, NEPSG emailed LLOYD'S requesting a copy of Mr. Olivieri's inspection report ("Report"). See *Exhibit 21- NEPSG's Request for Inspection Report*

60. On or about November 29, 2023, Mr. Ceceri emailed Mr. Hairabedian, stating the damaged tarp needed replacement to prevent further water intrusion and that SeekNow's repeated installations had caused additional damage beyond the originally existing damage. See *Exhibit 22- Correspondence Regarding Shredded Tarp*

61. On or about December 4, 2023, Mr. Hairabedian reaffirmed LLOYD'S refusal to replace the tarp and stated he was still awaiting Mr. Olivieri's report. See *Exhibit 22- Correspondence Regarding Shredded Tarp*

62. On or about January 23, 2024, NEPSG again requested a copy of Mr. Olivieri's Report.

63. On or about January 29, 2024, 102 days after the inspection, LLOYD'S provided the report. *Exhibit 23- Olivieri's Report*

:d in Provider/Bristol County Superior Court
mitted: 5/21/2025 3:08 PM
/elope: 5139359
/iewer: Carol M.

64. Despite Mr. Olivieri's report being dated December 8, 2023, it was not promptly shared with NEPSG, and no reason for the delay was given.

65. In the report, Mr. Olivieiri stated, "we were asked to comment if the roof damage was caused by a storm on March 14, 2023".

66. As a LLOYD'S representative, he misrepresented the "Date of Loss" as the date the damage occurred, rather than when it was discovered, and claimed no wind damage was reported near the property between March 13-15, 2023.

67. Mr. Mr. Olivieri's incompetence and misrepresentations led to a flawed report and an erroneous conclusion that the damages were unrelated to a storm event occurring on or about the date of loss.

68. Mr. Olivieri's report selectively reviewed weather data starting in October 2021, omitting events from March 2021 – when the Policy began.

69. The report identified four possible wind events between October 2021 and March 2023 but excluded earlier data, including Tropical Storm Henri in august 2021, which likely impacted the Subject Premises.

70. The storm-related damages have been properly documented regardless of the reporting window.

71. Mr. Olivieri's report falsely claims, "we noted no creasing, tearing, or missing shingles", however photos in both his report and the SeekNow report clearly show torn, creased, and missing shingles.

72. Mr. Olivieri's report relied on Weather Underground, a free public source that HAAG advises against using in paid reports. See *Exhibit 24- Weather Underground Terms of Use*

9

:d in Providence/Bristol County Superior Court
omitted: 5/21/2025 3:08 PM
velope: 5139359
viewer: Carol M.

73. The report itself notes the weather analysis included a printout from an online Weather Underground Search.

74. Mr. Olivieri's report included sixteen (16) satellite images from Google Earth, despite HAAG's Certified Inspection Procedure Handbook stating such images cannot be used due to copyright restrictions. See *Exhibit 25- HAAG Inspection Procedure Handbook Section 18.*

75. On or about January 29, 2024, NEPSG received a letter from LLOYD'S, dated January 26, 2024, reaffirming its denial of the claim based on Mr. Olivieri's deficient report. See *Exhibit 26- LLOYD's Second Denial Letter*

76. On or about April 21, 2025, Mr. Ceceri emailed SeekNow requesting the inspection request from Hausch & Company, the full inspection report, any additional photos or video taken, Mr. Matossegura's certifications, and invoices for the inspection and roof tarping. See *Exhibit 27- Correspondence with SeekNow*

77. That same day, SeekNow Resolutions Analyst Michaela Harris responded and provided all requested materials, noting that no video was taken. See *Exhibit 27- Correspondence with SeekNow*

78. Based on Ms. Harris's information, NEPSG states that Mr. Matossegura lacked any HAAG certifications at the time, which did not become active until December 1, 2023. See *Exhibit 28- Mr. Matossegura's HAAG Certification*

79. Under Rhode Island General Laws § 27-9.1-3, LLOYD'S was obligated to conduct a thorough, evidence-based investigation; to attempt a prompt, fair, and equitable settlement of the claim; and to avoid compelling NEPSG to initiate litigation to recover proceeds. See *Exhibit 29- R.I. Gen. Laws § 27-9.1-3*

d in Providence/Bristol County Superior Court
omitted: 5/21/2025 3:08 PM
/elope: 5139359
/iewer: Carol M.

80. LLOYD'S breached the Policy and its implied covenant of good faith and fair dealing, and violated its statutory duties as stated herein.

## COUNT I
### Petition for Declaratory Judgment Pursuant to R.I. Gen. Laws § 9-30

81. Plaintiff NEPSG repeats and realleges each and every allegation made in paragraphs 1 through 80 of the Complaint, as if fully set forth herein.

82. Pursuant to R.I. Gen. Laws § 9-30-1, 9-30-2, and 9-30-3, Plaintiff respectfully petitions this Court to declare and determine that direct physical loss to the Subject Premises caused by wind constitutes a covered loss under the Policy. Specifically, such loss falls under the Policy section titled "A. Coverage – We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss," commonly referred to as a covered peril or peril insured against.

83. Plaintiff further petitions this Court, pursuant to its authority under R.I. Gen. Laws § 9-30-1, § 9-30-2 and § 9-30-3, to declare, determine and order that the Claim was submitted as a wind damage claim—recognized under the Policy as a covered peril— and that NEPSG was therefore entitled to demand arbitration pursuant to the Policy's arbitration clause.

84. Plaintiff hereby respectfully petitions this Court, pursuant to R.I. Gen. Laws § 9-30-1, § 9-30-2 and § 9-30-3, to declare, determine and order that the Policy contains no provisions excluding coverage for "pre-existing damage" or for failure to "give prompt notice of a loss or damage."

11

d in Providence/Bristol County Superior Court
omitted: 5/21/2025 3:08 PM
velope: 5139359
viewer: Carol M.

## COUNT II
## Breach of Contract

85.   Plaintiff NEPSG repeats and realleges each and every allegation made in paragraphs 1 through 84 of the Complaint, as if fully set forth herein.

86.   Defendant LLOYD'S had a contractual obligation, pursuant to the Policy, to cover physical losses to the Subject Premises that were caused by perils insured against.

87.   LLOYD'S breached the terms of the Policy by denying the Claim where the physical damage to the Subject Premises was caused by a peril insured against.

88.   LLOYD'S had a contractual obligation, pursuant to Rhode Island law to investigate the Claim and to negotiate the settlement of the Claim with NEPSG according to the legal principles of good faith and fair dealing.

89.   LLOYD'S breached its covenant of good faith and fair dealing by not conducting a full and complete inspection of the Claim and wrongfully denying the Claim.

90.   As a direct and proximate result of Defendant LLOYD'S's breach of the Policy, NEPSG suffered damages.

91.   The damages suffered by NEPSG were a foreseeable consequence of LLOYD'S's breach of the Policy.

92.   Solely as a result of Defendant LLOYD'S's breach of its contractual obligations under the Policy, NEPSG has suffered damages.

## COUNT III
## Bad Faith and Violation of R.I. Gen. Laws § 9-1-33

93.   Plaintiff NEPSG repeats and realleges each and every allegation made in paragraphs 1 through 92 of the Complaint, as if fully set forth herein.

12

d in Providence/Bristol County Superior Court
omitted: 5/21/2025 3:08 PM
velope: 5139359
viewer: Carol M.

94. Defendant LLOYD'S had a duty to conduct a reasonable and proper investigation and to negotiate the settlement of the Claim, pursuant to Rhode Island law, including, but not limited to, R.I. Gen. Laws §§ 9-1-33 and 27-9.1-4(3).

95. LLOYD'S acted in bad faith in the handling of the Claim. This includes, but is not limited to, wrongfully denying the Claim, denying the Claim without performing a fair, competent, and evidence-based investigation, denying the Claim contrary to the evidence that the damage to the Subject Premises was caused by a peril insured against, wrongfully investigating the Claim, and forcing litigation to recover Claim proceeds.

96. As a direct and proximate result of LLOYD'S's acts of bad faith, NEPSG suffered damages.

97. The damages suffered by NEPSG were a foreseeable consequence of LLOYD'S's bad faith conduct.

98. Solely as a result of LLOYD'S's bad faith denial of the Claim, NEPSG has suffered damages.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff NEPSG on Count I of the Complaint requests pursuant to R.I. Gen. Laws § 9-30-1, § 9-30-2 and § 9-30-3 that this Honorable Court declare, rule, and order:

1. That the Policy includes within its covered losses provision direct physical damage to the Subject Premises caused by wind;

2. That NEPSG is entitled to an arbitration of the Claim, pursuant to the arbitration clause of the Policy when there is a dispute regarding the amount of loss for a claim covered under the Policy; and

13

d in Providence County Superior Court
mitted: 5/21/2025 3:08 PM
/elope: 5139359
/iewer: Carol M.

3.     That the Policy contains no provisions excluding coverage for "pre-existing damage" or for failure to "give prompt notice of a loss or damage."

WHEREFORE, Plaintiff, regarding Counts II and III of the Complaint, demands judgment in NEPSG's favor and against LLOYD'S in an amount sufficient to establish jurisdiction of this Court, as may be determined at trial, including, but not limited to, compensatory damages, consequential damages, and punitive damages, plus all interest (including interest pursuant to R.I. Gen. Laws § 27-7-2.2), costs, attorney fees and such other and further relief as this Court deems meet and just.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNTS I, II AND III.**

Plaintiff,
New England Property Services Group, LLC
By its attorneys,

/s/ Michael H. Brady
Michael H. Brady #6249
/s/ Nicholas G. Elias
Nicholas G. Elias #10775
New England Property Services Group, LLC
1822 North Main Street
Second Floor Annex Suite 001
Fall River, MA 02720
(508) 567-5738 - Phone
(401) 556-4423 - Fax
michael@newenglandpropertyservicesgroup.com
nicholas@newenglandpropertyservicesgroup.com

14